[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 1, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-17149

_____

D. C. Docket No. 07-01095-CV-BE-S

WARD CONNER,

Plaintiff-Appellant,

versus

LAFARGE NORTH AMERICA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 1, 2009)

Before CARNES  and PRYOR, Circuit Judges, and STAGG,[*] District Judge

PER CURIAM:

_____

[*]Honorable Tom Stagg, United States District Judge for the Western District of
Louisiana, sitting by designation.

Plaintiff Ward Conner, an African-American male, appeals the district court's grant of summary judgment to the defendant, Lafarge North America, Inc., on Conner's race discrimination claims filed under Title VII of the Civil Rights Act, codified at 42 U.S.C. §§ 2000(e) et seq., and 42 U.S.C. § 1981. This lawsuit arises out of defendant's refusal to promote Conner to a supervisory position within its cement manufacturing business. The district court properly granted summary judgment, and we affirm.

I.

Conner began working as a laborer at a cement plant located in Calera, Alabama in 1989. At that time the plant was owned by Lafarge's predecessor in interest. In 1992 Conner began working in the part of the plant known as the Packhouse. While working in the Packhouse, Conner received high ratings on his employment evaluations.

Lafarge purchased the Calera plant in 2001. In 2006, Lafarge decided to fill a vacant Packhouse Supervisor position. Lafarge's Human Resources Manager, Danielle Stokes, prepared a job posting for the Packhouse Supervisor position based on the qualifications contained in a job posting at another plant. Stokes posted this job opportunity form both internally and externally on Lafarge's website.

2

Several external and four internal candidates applied for the Packhouse Supervisor position. Following a determination by Stokes that all four of the internal candidates were qualified, Lafarge decided to interview each of them. The candidates included: Conner, Stephen Clements (white male), Denise Jones (African-American female), and Timothy Walker (white male).

Lafarge, following company policy, used an interview panel to conduct the initial round of interviews for the position. The following five employees served on the panel: Rick Buffkin (white male), Garrett Griffin (white male), Stokes (African-American female), Simon Ward (white male), and Lynn Wehrmeier (white male).

Buffkin, Griffin, Ward, and Wehrmeier interviewed Conner on June 7, 2006. During this interview, the panel members asked Conner questions concerning the position, including hypothetical questions designed to test Conner's managerial skills. Conner's answers to these questions caused the panel members to believe that Conner would not be willing to discipline employees, that he lacked the leadership and decisionmaking skills required for the position, and that he lacked the computer and software aptitude and experience required for the position.

Stokes interviewed Conner separately following his initial interview by the others. Although she gave Conner higher scores than two of the four candidates,

3

she came away "bothered" by Conner's "nonchalant" attitude toward employee discipline.

On June 16, 2006, Stokes sent an email to Wehrmeier containing a scoring matrix that had been used to grade candidates for a Quarry Supervisor position at another plant. Lafarge had used the matrix system of scoring interviewees only once before the challenged employment decision. At some point during the two months after that email was sent, Wehrmeier altered the weighting of the scoring matrix factors to fit the Packhouse Supervisor position. The interview panel did not receive this matrix until after the interviews had ended.

In August 2006, two months after the initial interviews, the panel met and assessed the candidates according to the matrix scorecard. Using their interview notes, each interviewer ranked the candidates on a scale of one to ten in ten categories. The panel did not consider any factors external to the candidates' interview performances. Stokes intended to multiply each candidate's raw score in a particular category by the weight assigned to that category. By mistake, she instead divided each candidate's score in each category by the intended numerical weight for that category.

After Stokes completed those mistaken calculations, the candidates ranked in the following order: Walker, Clements, Conner, and Jones. Even if Stokes had

4

performed the calculations correctly, Conner still would have finished in third place out of the four candidates. Furthermore, had Wehrmeier not altered the weighted values listed in the original scoring matrix, Conner would have finished in last place. Based on their high scores from Stokes' calculations, Walker and Clements advanced to the final round of interviews. Walker ultimately received the promotion.

Conner filed this lawsuit in June 2007 against Lafarge in federal district court alleging race discrimination in violation of Title VII of the Civil Rights Act, codified at 42 U.S.C. §§ 2000(e) et seq., and 42 U.S.C. § 1981. The district court granted summary judgment in favor of Lafarge. This is Conner's appeal.

II.

We review de novo a district court's grant of summary judgment and, "[i]n doing so, we 'view all the evidence and make all reasonable factual inferences in the light most favorable to the nonmoving party.' " Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1243 (11th Cir. 2004) (quoting Knight v. Baptist Hosp. Of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003)). In reviewing a district court's grant of summary judgment, "a federal appellate court may examine only the evidence which was before the district court when the latter decided the motion for summary judgment." Welch v. Celotex Corp., 951 F.2d 1235, 1237 n.3 (11th Cir. 1992)

(citing Ingalls Iron Works Co. v. Fruehauf Corp., 518 F.2d 966, 967 (5th Cir. 1975)).  "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.' "  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)).  Specifically, in this case, we must determine, "in view of all the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons [for the challenged employment decision] to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'"  Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008) (quoting Combs v. Plantation Patterns, 106 F.3d 1519,1538 (11th Cir. 1997)).

### III.

We use the same framework to analyze Title VII claims and claims of race discrimination under 42 U.S.C. § 1981.  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).  Under that framework, a plaintiff "may present sufficient circumstantial evidence of discrimination to create a jury question."  Combs v. Plantation Patterns, 106 F.3d 1519, 1527 (11th Cir. 1997).  When a plaintiff supports his Title VII claims with circumstantial evidence, as Conner does, "we use the now-familiar framework established by the United States

6

Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973), and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S.Ct. 1089 (1981)." <u>Combs</u>, 106 F.3d at 1527. Throughout this process, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Burdine</u>, 450 U.S. at 253, 101 S.Ct. at 1093.

Under this framework, "the plaintiff has the initial burden of establishing a prima facie case of discrimination." <u>Combs</u>, 106 F.3d at 1527-28 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S.Ct. at 1824; <u>Burdine</u>, 450 U.S. at 253-54 at n.6, 101 S.Ct. at 1093-94 at n.6). Lafarge has conceded that Conner has established a prima facie case for his failure to promote claim.

Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer to produce "legitimate, nondiscriminatory reasons for the challenged employment action." <u>Combs</u>, 106 F.3d at 1528 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802, 93 S.Ct. at 1824; <u>Burdine</u>, 450 U.S. at 254, 101 S.Ct. at 1094. We have held that a subjective reason, including interview performance, qualifies as a "legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion." <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1034 (11th Cir.

2000) (en banc).  Lafarge says that it did not select Conner for the Packhouse Supervisor position because of his poor performance in the interviews for that position.  Specifically, Lafarge asserts that Conner performed poorly in those portions of the interview dealing with the crucial areas of leadership, decisionmaking, safety, and computer skills.  Lafarge has satisfied its burden of offering a legitimate, nondiscriminatory reason for the challenged employment decision.

Once the defendant has offered legitimate, nondiscriminatory reasons for its decision, "the plaintiff has the opportunity to discredit the defendant's proffered explanations for its decision."  Combs, 106 F.3d at 1528.  A plaintiff has not successfully demonstrated pretext "unless it is shown both that the reason was false, and that discrimination was the real reason."  Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752 (1993)).  The plaintiff may do so by either directly "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Burdine, 450 U.S. at 256, 101 S.Ct. at 1095 (citing McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. at 1825-26).  If the plaintiff fails to "proffer sufficient evidence to create a genuine issue of material fact regarding

whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." Chapman, 229 F.3d at 1024-25 (citing Combs, 106 F.3d at 1529). We must determine, "in view of all the evidence, 'whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.' " Crawford, 529 F.3d at 976 (quoting Combs, 529 F.3d at 1538).

Conner first argues that Walker, the white candidate Lafarge ultimately promoted, is significantly less qualified than Conner and that this raises a genuine issue of material fact as to whether Lafarge's proffered reason is pretextual. In particular, Conner focuses on the fact that the job posting listed as qualifications a "[m]inimum of 2 years cement plant or terminal operating experience" and "supervisory experience" and asserts that he met these qualifications while Walker did not. In assessing this argument, we do not decide who we would have chosen for the job, but instead consider whether the disparities in qualifications are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004) (quoting Lee v. GTE Fla., Inc., 226 F.3d 1249, 1254 (11th Cir. 2000)).

9

Conner's comparative qualifications argument fails. Stokes, following Lafarge's company policy, declared all of the internal candidates qualified by virtue of their being internal candidates and Lafarge based the promotion decision on the interviews alone, rather than on the qualifications listed in the job posting. The present case resembles Springer v. Convergys Customer Mgmt Group, Inc., 509 F.3d 1344 (11th Cir. 2007), in which we upheld the district court's grant of summary judgment to the employer where the plaintiff possessed a four year college degree, the person promoted did not, and the job form listed such a degree as a requirement. Id. at 1349. The job description in Springer permitted professional experience as an alternative to the educational requirements contained in the job form, and the employee in charge of making the challenged promotion decision testified that experience was more important to her than the educational requirements contained in the job form. Id. We explained that "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based . . . a promotion decision on purely subjective criteria will rarely, if ever, prove pretext. . . ." Id. (quoting Denney v. City of Albany, 247 F.3d 1172, 1185 (11th Cir. 2001)). Lafarge, following its company policy, chose to treat internal candidate status as equivalent to the qualifications listed in the job posting and decided to make the interview process the sole measure by which

10

candidates were judged. Lafarge's reliance on the interviews alone, rather than in conjunction with the job posting requirements or the applicants' other qualifications, may not have been wise, but it does not demonstrate pretext. It is not the job of this Court to "sit as a super-personnel department that reexamines an entity's business decisions." Cooper, 390 F.3d at 738 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).

Conner next argues that Lafarge violated its usual procedure for making promotion decisions and that this deviation from company norms constitutes sufficient evidence of pretext to survive summary judgment. This court has held that "[a]n employer's violation of its own normal hiring procedure may be evidence of pretext." Bass v. Bd. of County Com'rs, 256 F.3d 1095, 1108 (11th Cir. 2001) (citing Hill v. Seaboard Coast Line R.R., 885 F.2d 804, 811 (11th Cir. 1989)). The record contains no evidence that Lafarge had ever filled supervisory positions using any method other than exclusive reliance on interviews. Faced with that, Conner argues Wehrmeier's reweighting of the matrix factors demonstrates pretext.

We disagree. First, Lafarge originally used the matrix to grade candidates for another position, Quarry Supervisor, at another plant; Wehrmeier merely adjusted the scoring to reflect the requirements of the Packhouse Supervisor

11

position.  The record contains no evidence that Wehrmeier selected primary candidates before the interviews or that he knew Conner's raw scores when he recalculated the weighting of the matrix categories.  Further, Conner would have finished in last place, rather than next-to-last place, among the candidates had Wehrmeier not reweighted the matrix categories.  Because the reweighting helped Conner, it cannot support an inference that it was done to hurt his chances.

Conner also contends that "Lafarge employed an erratic interviewing and scoring process that discredited its selection process," because the interview panel correlated eight interview topics with an unexplained scoring matrix of ten categories.  While these facts might demonstrate that Lafarge's selection process was unwise, they are not evidence that it served as a pretext for discrimination. Lafarge has supported its subjective interview scoring system with specific factual bases in the form of the interview panel's concern over Conner's willingness to discipline employees and his lack of software skills.  See Chapman, 229 F.3d at 1034 (subjective reason qualifies as a "legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion"); see also Browning v. Dep't of Army, 436 F.3d 692, 697 (6th Cir. 2006) (holding that employer's use

of matrix to grade job candidates on subjective criteria did not support inference of pretext).

Conner also attempts to demonstrate pretext by rebutting the asserted reasons offered by Lafarge to explain Conner's low interview scores: concerns over his willingness to discipline employees, his lack of software skills, and his inability to handle safety issues. "In order to avoid summary judgment, a plaintiff must produce enough evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." Chapman, 229 F.3d at 1037 (citing Combs, 106 F.3d at 1543). Conner has failed to do so. Along these lines, Conner points out that the scores he was given are inconsistent with his positive employee evaluations. That proves nothing both because the interview panel did not rely on employee evaluations and because those evaluations measure employees' skills in their current position, not their suitability for promotion to a supervisory position. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) ("the performance evaluation and the interview selection stage . . . are not interchangeable").

Conner also argues that the explanation that his low scores were based on his unwillingness to discipline employees is pretextual because he specifically told Stokes that he had no problem imposing discipline. What Conner told Stokes

13

when she separately interviewed him does not change the impression he left with the other interviewers earlier. Besides, the problem was not that Conner had failed to say that he was willing to discipline employees when needed. The problem was that his answers to the hypothetical situations posed to him by the other interviewers gave them reason for concern.

Conner also argues that Ward scored Conner lower than Walker even though Ward's interview notes for those two candidates were similar and that this shows pretext. It does not. The fact that Ward made similar notes about Conner and Walker, which were intended for his own reference in later grading the candidates, does not show that those candidates gave identical answers in their interviews. All of the interviewers, not just Ward, testified that Conner's interview answers gave them reasons to be concerned about his willingness to discipline employees. Ward's scoring of Conner was consistent with that of the other panel members in this key area.

Conner also argues that one of the members of the interview panel, Buffkin, harbors racial animus, as evidenced by past complaints filed against him, Conner's own testimony that Buffkin treats African-American employees differently, and Buffkin's alleged use of a racial slur. Buffkin's alleged use of the racial slur occurred more than ten years earlier, and it was "isolated and unrelated to the

14

employment decision." See Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002). "Although a comment unrelated to a [challenged employment decision] may contribute to a circumstantial finding of pretext, it will usually not be sufficient absent some additional evidence of pretext." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1229 (11th Cir. 2002) (citations omitted). Further, Buffkin was only one member of a five member panel, and Conner admitted during his deposition that Stokes did not discriminate against him and that he had no reason to believe that Griffin, Ward, or Wehrmeier harbored racial animus other than his opinion that they did not promote him to Packhouse Supervisor due to his race. We have held in a § 1983 termination case that when policymaking authority rests with an entity, an unconstitutional motive on the part of one member of a three member majority is insufficient to impute an unconstitutional motive to the entity as a whole. Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002) (citing Mason v. Village of El Portal, 240 F.3d 1337, 1339 (11th Cir. 2001)). Any alleged bias on Buffkin's part cannot be imputed to the entire interview panel.

Finally, Conner argues that even if none of his arguments are sufficient by themselves to raise a genuine issue of material fact about whether Lafarge's proffered justification for its decision was a pretext for discrimination, all of them taken together would allow a reasonable factfinder to find pretext. In making this

15

argument, Conner relies heavily on Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763 (11th Cir. 2005). In that case, we held that, when taken together, the employer's statements in favor of promoting a candidate of a certain race, the plaintiff's superior qualifications in comparison with the person actually promoted, the employer's deviation from its own clearly established hiring practices, and the plaintiff's direct rebuttal of many of the employer's proffered justifications created a genuine issue of material fact as to whether the employer's proffered reasons for failing to promote the plaintiff were pretextual. Id. at 772.

Conner's situation is different. Unlike the plaintiff in Vessels, Conner has not directly rebutted Lafarge's proffered justification for its decision not to promote him. Unlike the discriminatory statements in Vessels, Buffkin's alleged statement occurred over a decade ago and did not relate in any way to the employment decision at issue. Finally, unlike the plaintiff in Vessels, Conner has not shown that his employer violated its own clearly established personnel procedures.

Because Conner has failed to cast sufficient doubt on Lafarge's proffered nondiscriminatory reasons for not promoting him to create a genuine issue of material fact about whether those reasons actually motivated Lafarge's decision, the judgment of the district court is

**AFFIRMED.**