[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-14854
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 20, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00535-CG-M

BARBARA JOHNSON,

Plaintiff-Appellant,

versus

CITY OF MOBILE, ALABAMA,

Defendant-Appellee,

CITY OF MOBILE URBAN DEVELOPMENT
AND PUBLIC SERVICES DEPARTMENT,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 20, 2009)

Before CARNES, WILSON and FAY, Circuit Judges.

PER CURIAM:

Barbara Johnson, an African American woman, appeals from the district court's grant of summary judgment in favor of the City of Mobile, Alabama, in Johnson's employment discrimination action, brought pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. For the reasons set forth below, we affirm.

**I.**

Johnson filed a complaint in federal court against the City of Mobile, Alabama,[1] pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Alabama state law. Johnson alleged that she was an African American female who had been employed with the City of Mobile since 1996 as a municipal enforcement officer in the Urban Development Department. For all times relevant to this appeal, Laura Clarke was the director of the Urban Development Department, and Ron Jackson, a white male, was Johnson's supervisor.

Johnson alleged that her duties, which included, <u>inter alia</u>, nuisance abatement, were similar to the duties performed by a "Building Inspector II." As a result, she requested Jackson to "upgrade her status to that of a 'Building Inspector

---

[1] The district court subsequently dismissed the "City of Mobile Urban Development and Public Services Department" as a defendant, and Johnson does not challenge that ruling on appeal.

II' but her requests were denied." She had also applied for the positions of "Building Director I", zoning inspector, and chief property Maintenance Inspector officer, but she did not receive any of these positions. Johnson also applied for two supervisor positions in January 2007, but "two black males under the age of forty (40) with less experience than Johnson were given the positions . . . ." Incorporating the above allegations, Johnson brought three generalized causes of action: 1) a discrimination and retaliation claim under Title VII and § 1981; 2) a claim for intentional infliction of emotional distress; and 3) a claim for negligent hiring, training, supervision, and retention.

Following discovery, the City of Mobile moved for summary judgment. In its memorandum of law, the City of Mobile argued that its failure to upgrade Johnson to the position of Building Inspector II was not discriminatory. With respect to the two supervisor positions, the City of Mobile argued that it did not exercise any gender bias in declining to promote Johnson to these positions, as the reason why she was not hired was due to her poor interview and the "superior qualifications of the other candidates when compared to the Plaintiff."

The City of Mobile attached documentary evidence in support of its motion, the following of which is relevant to this appeal. In an affidavit prepared by Jackson, he stated, inter alia, that:

3

The decision to reassign the nuisance abatement duties to Cindy Aspinwall was based solely on the Plaintiff's performance. I had requested specific information from Ms. Johnson i[n] a specific format, and she could not provide it. I did not reassign the Plaintiff's nuisance abatement duties to Ms. Aspinwall in retaliation for the Plaintiff's request for a promotion or raise. The decision to reassign the nuisance abatement duties was further not based on the Plaintiff's race, age, or sex.

The only additional evidence submitted with regard to the reassignment of Johnson's nuisance abatement duties was contained in Aspinwall's deposition, where she testified that in January or February of 2006, Jackson had reassigned Johnson's nuisance abatement duties to Aspinwall. She explained that the reason why Jackson reassigned these duties was because Johnson was "not doing a spreadsheet. He had asked for a spreadsheet over and over and over again and she never produced a spreadsheet." When asked what kind of spreadsheet, Aspinwall explained that Jackson wanted a spreadsheet "[o]f all the nuisance abatements or unsafe building – a list of all the properties that was in this procedure, and she never produced that."

In Johnson's deposition, she testified that she applied for a supervisor position in the Urban Development Department. She testified that she was qualified for the position and that Jackson and David Daughenbaugh interviewed her. Jackson had previously told Johnson to apply for the position and, at the interview, Jackson told her that she was a good worker and should qualify for the

4

job.  When asked if she remembered anything else about the interview, Johnson testified: "Just laughing and smiling and told me good luck on the – him and David both told me good luck on the application."  A man named Gerard McCants ultimately received the position.  Johnson believed that McCants, like her, had worked as municipal enforcement officer for the City of Mobile for the previous 10 or 11 months but, before that, had worked at a "cleaners."  She believed that gender was a factor in the decision to hire McCants because, although Clarke, the head of the entire department, was a female, there were no female supervisors.

In Jackson's affidavit, he stated that he interviewed four candidates for the supervisor position in the Urban Development Department.  He asked the four candidates the same questions during the interview, and he ultimately recommended McCants for the position.  Jackson selected McCants for the job

> due to his overwhelming qualifications.  Mr. McCants held a degree from the University of Alabama in advertising and marketing.  He had over fifteen (15) years of management experience in the private sector and had worked as a Municipal Enforcement Officer for over a year. During his employment with the City, Mr. McCants exhibited his ability to be an outstanding employee.  He was extremely efficient in managing his workload.  He also exhibited a positive attitude and tremendous initiative.  He was willing to take on added responsibility and work with others.  On numerous occasions, he volunteered to assist other inspectors or assume additional duties.

Jackson stated that gender was not a factor in his hiring decision, and he was not aware of Daughenbaugh relying on gender in making his decision.  Daughenbaugh

5

submitted a virtually identical affidavit with respect to his decision to recommend McCants for the position.

Ray Richardson, Environmental Manager of the Environmental Services Department, also submitted an affidavit. He stated that he interviewed several candidates for the supervisor position in the Environmental Services Department and ultimately selected Terrell Washington for the position. He explained:

> One of the reasons I did not select Ms. Johnson is because she was tentative in her responses and lacked self-confidence during the interview. I had also personally observed Ms. Johnson's performance as a Code Enforcement Officer under my direction. She had been given the opportunity to take the leadership role in the newly formed Environmental Services Department, but had not done so. I selected Terrell Washington because the person selected for the position needed to possess attributes of leadership, self-direction, knowledge of job specific material and guidelines, as well as a willingness to step outside of the box. The Plaintiff did not have these qualities.

Richardson stated that gender was not a factor in his decision.

In response to the City of Mobile's summary judgment motion, Johnson focused on her failure to receive the two building inspector positions and generally complained of her failure to be promoted. Johnson attached a portion of Jackson's deposition to her response, in which he confirmed that Johnson failed to provide spreadsheets in connection with her nuisance abatement duties and, when asked if this "factor [was] placed in her 2006 personnel review report," Jackson responded, "I'm sure it was taken into consideration." Jackson then testified that he "thought"

6

Johnson received a "high quality" evaluation that year.

After the City of Mobile submitted a reply and additional documentary evidence, none of which is relevant to this appeal, the district court entered an order granting the City summary judgment on all of Johnson's claims. First, the district court found that Johnson had abandoned her state law claims in Counts Two and Three and that she abandoned any age discrimination claim. After finding that the City of Mobile was entitled to summary judgment with respect to the two building inspector positions because Johnson was not qualified for the positions, the court found that, "[t]o the extent that Ms. Johnson complains that Mobile should have paid her what it pays a Building Inspector II to compensate her adequately for performing nuisance abatement work," the City of Mobile was entitled to summary judgment because there was no evidence that anybody received additional compensation for these duties and, therefore, Johnson could not show pretext. In the course of addressing that issue, the court noted that Johnson's nuisance abatement duties were reassigned to Aspinwall because Johnson failed to prepare a spreadsheet that Jackson had requested.

After addressing other miscellaneous claims not relevant here, the court addressed the two supervisor positions. The court assumed "for the sake of argument" that Johnson made out a prima facie case of gender discrimination, but

7

found that the City of Mobile came forward with legitimate reasons for declining to promote Johnson.  Specifically, with respect to the supervisor position in the Urban Development Department, the court emphasized that McCants was highly qualified for the position.  With respect to the supervisor position in the Environmental Services Department, the court emphasized that Johnson performed poorly in the interview, she had worked for Richardson in the past but did not assume a leadership role, and Washington exhibited the necessary attributes for the position.  Because Johnson did not come forward with any evidence to show that the City of Mobile's reasons for failing to promote her to these positions were pretextual, the court granted the City of Mobile summary judgment on these claims.  This appeal followed.

## II.

We review the grant of summary judgment de novo.  Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008).  "Summary judgment is rendered 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Id. (quoting Fed.R.Civ.P. 56(c)).  "In making this assessment, the Court must view all the evidence and all factual inferences reasonably drawn from the

8

evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the non-movant." Id. (quotations and citations omitted).

"Title VII prohibits employers from discriminating 'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'"[2] McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir.) (quoting 42 U.S.C. § 2000e-2(a)(1)), cert. denied, 129 S.Ct. 404 (2008). In this case, there is no dispute that Johnson failed to produce direct evidence of discrimination, and, therefore, she must "prove discrimination through circumstantial evidence, using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." Id.

"Under this framework, if the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008) (quotation omitted). "To satisfy this intermediate burden, the

---

[2] Johnson also invoked § 1981 in her complaint in addition to Title VII. However, because "[b]oth of these statutes have the same requirements of proof and use the same analytical framework, . . . we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

9

employer need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quotation and alteration omitted). "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (footnote omitted); see also Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004) (describing the employer's burden in this respect as one of production, not persuasion)

"If the employer does this, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." Crawford, 529 F.3d at 976. "A reason is not [a] pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder

10

could find them unworthy of credence." Vessels v. Atlanta Independent School System, 408 F.3d 763, 771 (11th Cir. 2005) (quotation omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

On appeal, Johnson has abandoned all of her claims except for the following: 1) a claim of racial discrimination in connection with the reassignment of her nuisance abatement duties; and (2) a claim of gender discrimination in connection with her failure to receive two municipal enforcement supervisor positions. See Rioux, 520 F.3d at 1274 n.4 (arguments not raised on appeal are abandoned). We address these claims in turn.

## A. The Reassignment of Johnson's Nuisance Abatement Duties

In this case, the district court addressed Johnson's claim that she should have received a raise or promotion based on her nuisance abatement work. However, on appeal, Johnson does not advance this claim, but instead contends that she suffered racial discrimination when the City of Mobile reassigned her nuisance abatement duties to Aspinwall, a white female. Even assuming arguendo that Johnson has made out a prima facie case on this claim, the City of Mobile offered a legitimate,

11

nondiscriminatory reason for the reassignment. Specifically, Jackson explained

that the reason he reassigned Johnson's nuisance abatement duties was because he

had "requested specific information from Ms. Johnson i[n] a specific format, and

she could not provide it."[3]

Because the City of Mobile articulated a legitimate, nondiscriminatory

reason for reassigning Johnson's nuisance abatement duties to Aspinwall, it is

Johnson's burden to demonstrate that this reason was a pretext for discrimination.

Crawford, 529 F.3d at 976. On appeal, Johnson asserts that Jackson's reason was

pretextual because Johnson received a "high quality" evaluation, despite the fact

that the spreadsheet incident with Jackson was taken into consideration. It is true

that Jackson testified that he "thought" that Johnson received a "high quality"

evaluation and that the spreadsheet incident was a "factor" that was considered.

However, Johnson points to no evidence demonstrating that the

reassignment of her nuisance abatement duties was necessarily inconsistent with

her "high quality" evaluation. Indeed, Johnson did not submit a copy of her

evaluation and, as the City of Mobile points out, Jackson testified only that the

---

[3] Although the City of Mobile did not proffer this reason at the summary stage, it cannot be faulted for its failure to do so, as Johnson never raised any reassignment claim in her complaint. Although this raises the question of whether Johnson's claim is properly before us, that question is an academic one because, as we explain below, the City of Mobile was entitled to summary judgment on this claim.

12

spreadsheet incident was a "factor" in her overall year-end evaluation. Thus, there is nothing to suggest that the spreadsheet incident was so critical that it would have necessarily precluded a positive evaluation. The only other evidence in the record on the reassignment issue appears to be Aspinwall's testimony, and she testified that she received Johnson's nuisance abatement duties because Johnson repeatedly failed to provide Jackson with a spreadsheet. In this respect, there is nothing in the record to suggest that Aspinwall, who was not one of Johnson's supervisors, was incredible on this point.

Thus, Johnson has not come forward with sufficient evidence of pretext that would allow a reasonable factfinder to conclude that Jackson's legitimate, nondiscriminatory reason for reassigning Johnson's nuisance abatement duties to Aspinwall was unworthy of credence. Vessels, 408 F.3d at 771. Nor has Johnson come forward with any evidence to suggest that race played a role in Jackson's decision. See Brooks, 446 F.3d at 1163. Accordingly, because Johnson has not met her burden to show pretext, we affirm the grant of summary judgment to the City of Mobile on this claim.

### B. The Two Supervisor Positions

The district court found that Johnson had made out a prima facie case of gender discrimination in connection with her failure to receive a supervisor

13

position in the Urban Development Department and a supervisor position in the Environmental Services Department. As explained below, even assuming arguendo that Johnson has made out a prima facie case on these two claims, the district court correctly found that Johnson was unable to show that the City of Mobile's legitimate, nondiscriminatory reasons for failing to hire her were pretextual.

**1. The Supervisor Position in the Urban Development Department**

In its motion for summary judgment, the City of Mobile proffered that it hired McCants for the supervisor position in the Urban Development Department instead of Johnson because of his superior qualifications. In her brief, Johnson attacks this reason as being factually unsupported, insufficiently clear, and subjective. These arguments are without merit, as Jackson and Daughenbaugh both explained in their affidavits that they hired McCants because of his "overwhelming qualifications," not because of his gender. Further, Jackson and Daughenbaugh clearly elaborated on the specifics of McCants's qualifications.

Having articulated a legitimate, nondiscriminatory reason for hiring McCants, the burden shifts to Johnson to show that the City of Mobile's reason was a pretext for discrimination. Crawford, 529 F.3d at 976. Johnson suggests in her brief that the reason was pretextual because she was more qualified than

14

McCants for the position. Johnson, however, cannot "establish pretext simply by showing that she is more qualified than [McCants]." Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001). Rather, she must show that "any disparity between [Johnson's] and [McCant's] managerial qualifications is so great that a reasonable fact-finder could infer that [the City of Mobile] did not believe [McCants] to be better qualified." Id.

Jackson and Daughenbaugh explained that McCants was qualified because he possessed a degree from the University of Alabama, had 15 years of management experience in the private sector, and had been an outstanding municipal enforcement officer with the City for over a year, where he had demonstrated efficiency, positivity, initiative, and ambitiousness. Johnson points out that, like McCann, she had a college degree and was a "high quality" employee. These facts, however, do not demonstrate any apparent disparity between her qualifications and McCants's qualifications. See Cofield, 267 F.3d at 1268.

The only fact that Johnson points to in this regard is that she was a municipal enforcement officer for ten years, while McCants had only worked in that capacity for one year. However, McCants had 15 years of management experience in the private sector, whereas Johnson was not employed in a managerial capacity at all

while working for the City.  See Cofield, 267 F.3d at 1268 ("Bowen's employment record, by comparison, reflects experience in higher level management positions than Cofield.").  Thus, the mere fact that Johnson worked as a municipal enforcement officer for longer than McCants does not demonstrate an obvious disparity in Johnson's favor.

In sum, even though Johnson may have been qualified for the position, "any disparity in qualifications that may exist here is so slight as to fail to establish that [the City's] reason for not promoting [Johnson] was pretexual."  Id. at 1269.  Accordingly, we affirm the grant of summary judgment in the City of Mobile's favor on this claim.

**2.  The Supervisor Position in the Environmental Services Department**

In its motion for summary judgment, the City of Mobile proffered that it hired Washington for the supervisor position in the Environmental Services Department instead of Johnson because of her poor performance during the interview and Washington's superior qualifications.  In her brief, Johnson again attacks this reason as being factually unsupported, unclear, and subjective.  However, Richardson explained in his affidavit precisely why he hired Washington instead of Johnson.  Specifically, he stated that Johnson was tentative and lacked self-confidence during the interview, failed to assume a leadership role while

16

working under Richardson in the past, and, unlike Washington, did not possess leadership, self-direction, knowledge of job-specific materials and guidelines, or a willingness to step outside of the box. Thus, Johnson's contention that the City of Mobile's reason was factually unsupported is without merit.

Furthermore, we have held that a subjective reason for not hiring a candidate, such as a poor interview, is valid so long as the employer offers a "clear and reasonably specific explanation" for reaching that conclusion. Chapman, 229 F.3d at 1033-35. As discussed above, Richardson's reasons for failing to hire Johnson were both clear and reasonably specific, and Johnson does not explain on appeal in what way Richardson's reasons lacked the requisite clarity or specificity.

Having articulated legitimate, nondiscriminatory reasons for hiring Washington, the burden shifts to Johnson to show that the City of Mobile's reasons were a pretext for discrimination. Crawford, 529 F.3d at 976. In her brief, Johnson asserts only that she had ten years of experience, was a high quality worker, had a college degree, and was qualified enough to receive an interview. She says nothing about Washington's qualifications and does not assert that she was more qualified than him. This is insufficient to demonstrate that the City of Mobile's reasons for hiring Washington were pretextual. See Cofield, 267 F.3d at 1268. Accordingly, we affirm the grant of summary judgment in the City's favor

on this claim.

## III.

In sum, we conclude that, even assuming arguendo that Johnson has made out a prima facie case on the above claims, she has failed to come forward with sufficient evidence demonstrating that the City of Mobile's legitimate, nondiscriminatory reasons were a pretext for discrimination. Accordingly, we affirm the district court's grant of summary judgment in the City's favor.

**AFFIRMED.**