Martha DELGADO, Plaintiff,

v.

UNITED STATES DEPT. OF
TRANSP., Defendant.

Case No.: 09–22819–CIV.

United States District Court,
S.D. Florida.

May 4, 2010.

Teri Guttman Valdes, Coral Gables, FL, for Plaintiff.

Christopher Macchiaroli, U.S. Attorney's Office, Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOSE E. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (**D.E. No. 30**). Because Defendant offered a legitimate, non-discriminatory reason for deciding not to promote Plaintiff, and because Plaintiff failed to adduce a scintilla of evidence to suggest that the reason was a pretext for discrimination, the Court hereby GRANTS Defendant's motion.

### I. BACKGROUND

Plaintiff, Martha Delgado, filed this lawsuit against Defendant, Ray LaHood, in his capacity as the Secretary of the Department of Transportation under Title VII of the Civil Rights Act of 1964. During the time relevant to this action, Plaintiff was an air traffic controller who applied for a promotion and, she alleges, was not chosen for the position because the Department discriminated against her on the basis of her race (White), national origin (Cuban) and sex (female). The parties do not dispute the following material facts unless specifically noted otherwise.[1]

### A. The Promotion Opportunity

After working for the Department as an Air Traffic Control Specialist since November 1990, Plaintiff applied for a promotion to become an Air Traffic Control Specialist (Operations Supervisor). As the name suggests, the primary duty of an

1. Plaintiff did not file a response in opposition to Defendant's Statement of Material Facts that "correspond[ed] with the order and with the paragraph numbering scheme used by" Defendant, as required by the Local Rules. S.D. Fla. L.R. 7.5(C). Although Plaintiff's failure to comply with the Local Rules may be grounds for deeming all of Defendant's State-ments of Material Fact to be admitted (provided that they are supported by the evidence in the record), S.D. L.R. 7.5(D), the undersigned has, in an abundance of caution, considered Plaintiffs non-compliant Statement of Material Facts in making the determinations set forth herein.

"Operations Supervisor" is to supervise the Air Traffic Control Specialists (LeVangie Depo., D.E. No. 37, Ex. 1 at 6, 8). Plaintiff applied for the promotion as a result of vacancy announcement that was issued in December 2007 (Deft.'s Statement of Material Facts ("DSOF"), D.E. No. 30 at 3, ¶ 1). Six people—one African–American male, one white female, and four white males—were ultimately hired for the position, but Plaintiff was not.

The vacancy announcement for the Operation Supervisor positions identified basic information about the job and how to complete the application. It also contained a section entitled "Evaluation Criteria," which explained that applicants would be evaluated based on the four standard Managerial Selection Factors—which are applicable to any management or supervisory position in the FAA and include "Achieving Results," "Leading People," "Building Relationships," and "Leading Change"—as well as a fifth selection factor, which are qualities and knowledge specific to Air Traffic Operations ("ATO").

According to the vacancy announcement, 50% of the applicant's score would be based on the four Managerial Selection Factors, and the remaining 50% of the applicant's score would be based on the ATO-specific factor (D.E. No. 30, Ex. 1); (Whitlock Depo., D.E. No. 37, Ex. 1 at 24–25). The vacancy announcement did not specify that an interview would be part of the process (Pltf.'s Statement of Material Facts ("PSOF"), D.E. No. 37 at 4, ¶ 14).

After the deadline to submit applications expired in January 2008, the Regional Office screened the applications to identify the applicants who submitted their applications on time and met the minimum qualifications for the position (Whitlock Depo., D.E. No. 37, Ex. 1 at 19). Plaintiff and fifteen others passed this initial screening process and made it onto the "Selection List," which was forwarded to the facility

in need of employees to make a hiring decision. The Regional Office did not rank or score the applicants in any way, but merely sent the Selection List in alphabetical order of the applicants' names to the Miami Air Traffic Manager—the manager at the facility which requested additional employees (Whitlock Depo., D.E. No. 37, Ex. 1 at 22–23). The Miami Air Traffic Manager, Kenneth E. Thomas, was the "Selecting Officer" responsible for conducting the substantive evaluations of the 16 eligible applicants and making the ultimate decision regarding their promotions (DSOF, D.E. No. 30 at 5, ¶ 5); (Whitlock Depo., D.E. No. 37, Ex. 1 at 26).

## B. *The Selection Process*

After one of the applicants was removed from consideration because he accepted a job elsewhere, Manager Thomas appointed a three-person panel to conduct applicant interviews and make recommendations, although he retained the ultimate decision-making authority (Heideck Decl., D.E. No. 30, Ex. 2 at 3, ¶ 4); (Sommers Decl., D.E. No. 30, Ex. 2 at 3, ¶ 5).

### 1. *Selection Panel*

All of the applicants were interviewed by the three-person panel. Some of the applicants—including Plaintiff—were interviewed in person, while others—4 or 5 of them—were interviewed over the phone (PSOF, D.E. No. 37 at 5, ¶¶ 26–27). The morning of the first interview, the panel was provided with the applications that were submitted by each of the applicants, as well as a list of interview questions to ask the applicants and a corresponding set of model answers (PSOF, D.E. No. 37 at 5, ¶ 28); (Heideck Depo., D.E. No. 37, Ex. 1 at 38). All of the applicants were asked the same questions (Heideck Depo., D.E. No. 37, Ex. 1 at 39).

Although the panel was not given specific instructions on how to score the inter-

views, the panel decided that they would give one point for an answer that matched the model answer, a half-point for an answer that was partially correct and zero points for a wrong answer (Heideck Depo., D.E. No. 37, Ex. 1 at 41–42). The panel members reached a group consensus for each applicant's interview score, although they did take notes individually during the interviews (Heideck Depo., D.E. No. 37, Ex. 1 at 41). Significantly, Plaintiff concedes that the interview panelists did not harbor any discriminatory animus[2] and that the interview process was not inherently discriminatory (Delgado Depo., D.E. No. 30, Ex. 6 at 4, pp. 40–45).

After the interviews were completed, the panel also reviewed the application packages that were submitted by the applicants and considered their interview scores along with their work experience, knowledge, attitude and enthusiasm to create an overall list of recommendations for Manager Thomas (Heideck Depo., D.E. No. 37, Ex. 1 at 41–42).

As discussed in more detail below, Manager Thomas, who was ultimately responsible for making the selections, averred that he placed "special emphasis" on the applicants' interview scores. Although the panel ranked Plaintiff sixth overall, she per-

formed relatively poorly on her interview, as her raw interview score placed her tied for ninth on the 15–applicant list. Specifically, the applicants' interview rankings and overall rankings were as follows, with those names in italics indicating the applicants who were ultimately promoted (Sommers Decl., D.E. No. 30, Ex. 3 at 7–8, ¶ 8):[3]

| Interview Rank | Overall Panel Rank | Name | Interview Score |
|---|---|---|---|
| 1 | 1 | Gary Wells | 36 |
| 2 | 2 | Vincent McMenamy | 33 |
| 3–T | 3 | Andre Ferguson | 30 |
| | 4 | Paul Withers | 30 |
| | 8 | Eric Lindholm | 30 |
| | 13 | Carl Smalls | 30 |
| 7–T | 10 | Robin Wells | 27 |
| | 5 | Jeffrey Doege | 27 |
| 9–T | 11 | George Perez | 24 |
| | 9 | Keith Wade | 24 |
| | 6 | **Martha Delgado** | 24 |
| 13–T | 12 | Robert Cashdollar | 18 |
| | 7 | Harvey Pake | 18 |
| 14 | 14 | Roy Moore | 15 |
| 15 | 15 | Nathaniel Beard | 12 |

2. Although Plaintiff unambiguously testified that neither Mr. Mineo or Ms. Heideck discriminated against her (Delgado Depo., D.E. No. 30, Ex. 6 at 4, pp. 40–41), she attempted to claim that Mr. Sommers may have discriminated against her, but was forced to admit that her only basis for such a claim was the fact that they had a previous conflict regarding her ability to get time off of work to volunteer at career day, and not because of her ethnicity, national origin or gender, which are at issue in this case (Delgado Depo., D.E. No. 30, Ex. 6 at 5, pp. 42–43).

3. The undersigned notes that, although Defendant (citing Manager Thomas's declaration), states that Plaintiff received 24 points on her interview score (DSOF, D.E. No. 30 at 5–6,

¶ 7), an independent review of the record strongly suggests that Plaintiff actually scored only 21 points on her interview. The notes that the three interview panelists took during the interview indicate that they each gave Plaintiff a score of 7, which would add up to a score of 21, not 24 (Heideck Decl., D.E. No. 30, Ex. 2 at 6); (Sommers Decl., D.E. No. 30, Ex. 3 at 6); (Mineo Decl., D.E. No. 30, Ex. 4 at 5). Moreover, the administrate record reflects that Plaintiff scored 21 points on her interview, not 24 points (Final Agency Decision, D.E. No. 30, Ex. 11 at 10). Nevertheless, because Defendant's possible error inures to Plaintiff's benefit, the undersigned will, in an abundance of caution, assume that Plaintiff's interview score was indeed a 24.

### 2. Manager Thomas

Manager Thomas averred that he "placed special emphasis on the applicants' interview scores," because he "consider[s] the interview to be the best indicator of an applicant's competence on agency policies and understanding of the agency's objectives and goals," whereas an examination of an applicant's length of experience in isolation "does not in [and] of itself establish knowledge of agency policies or an understanding of how the agency anticipates changing to improve its performance" (Thomas Decl., D.E. No. 30, Ex. 5 at 3, ¶ 4). Therefore, as shown in the chart above, the six applicants chosen for the position were the ones that received the highest interview scores, with the exception of Carl Smalls, who was not chosen since his previous supervisor did not give him a favorable recommendation because of his attendance problems (Thomas Decl., D.E. No. 30, Ex. 5 at 5, ¶ 5).

In addition to their interview scores, Manager Thomas noted his hiring decisions were supported by the fact that Gary Wells had 12 years of Front Line Manager experience; Robin Wells had 16 years of Air Traffic Control Specialist ("ATCS") experience as well as 2 years of Traffic Management Unit experience; Paul Withers had 20 years of ATCS experience; Vincent McMenamy had 20 years of ATCS experience and 1 year of experience as a support specialist; Andre Ferguson had 17 years of ATCS experience; and Eric Lindholm had 19 years of ATCS experience (Thomas Decl., D.E. No. 30, Ex. 5 at 3-4, ¶ 5). It is undisputed that Andre Ferguson is a black male, and the applicants chosen for the remaining spots consisted of 4 white males and 1 white female (Thomas Decl., D.E. No. 30, Ex. 5 at 4, ¶ 7); (Heideck Decl., D.E. No. 30, Ex. 2 at 2, ¶ 7).

Finally, it is uncontested that Manager Thomas sought to hire 8 Operations Specialists, but he was only authorized to fill 6 Operation Specialist positions (Thomas Decl., D.E. No. 30, Ex. 5 at 3, ¶ 5). Manager Thomas averred that if he were authorized to hire another two Operations Specialist, he would have likely selected Plaintiff and George Perez, who, according to the chart above, received the same interview score as Plaintiff (Thomas Decl., D.E. No. 30, Ex. 5 at 3, ¶ 4).

## II. LEGAL STANDARDS

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Electric Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

If the moving party bears the burden of proof at trial, the moving party must es-

tablish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties,* 941 F.2d 1428, 1438 (11th Cir.1991). The moving party " 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.' " *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.' " *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties,* 941 F.2d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991)). *See also* Fed.R.Civ.P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material negating the opponent's claim." *Id.* at 323, 106 S.Ct. 2548 (empha-

sis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324, 106 S.Ct. 2548. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting Fed. R.Civ.P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

III. *ANALYSIS*

The Department of Transportation moved for summary judgment on numerous grounds.[4] For the reasons explained in more detail below, the Court concludes that the Department is entitled to the entry of summary judgment because Plaintiff cannot rebut the Department's legitimate, non-discriminatory reason for Plaintiff's failure to earn the promotion as a matter of law.

■ According to the familiar *McDonnell* burden-shifting framework applicable to discrimination claims, the plaintiff bears the initial burden of establishing a prima

---

4. In addition to its argument that Plaintiff was not promoted for legitimate, nondiscriminatory and non-pretextual reasons, the Department also makes the following arguments: First, the Department asserts that the Court should enter summary judgment on Plaintiff's claim of national origin (Cuban) discrimination, because she failed to exhaust the claim in the administrative proceedings. Second, the Department asserts that Plaintiff failed to establish a prima facie claim of discrimination because (a) applicants who were Plaintiff's race (white) and sex (female) were

chosen for the position; (b) Plaintiff was not as qualified as the applicants who were chosen for the position, by virtue of her low interview scores; and (c) Plaintiff asserted various conflicting theories of discrimination. Finally, the Department asserts that Plaintiff cannot sustain her claim for mental anguish damages on the strength of her self-serving testimony alone, in light of the fact that her own psychologist attributed Plaintiff's emotional distress to an incident that occurred after she learned that she would not be promoted.

facie case of discrimination, which shifts the burden to the defendant to proffer a legitimate, non-discriminatory reason for the allegedly wrongful act, and, finally, the burden returns to the plaintiff to demonstrate that the defendant's explanation is a mere pretext for an underlying discriminatory animus. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### A. *Legitimate Non–Discriminatory Reason*

■ Plaintiff first suggests that the Department has not set forth any argument in support of a legitimate non-discriminatory reason for failing to promote her (D.E. No. 37 at 11), but this suggestion is meritless. To review the uncontroverted evidence in the record, Plaintiff was 1 of 15 applicants who met the basic qualifications for the promotion and whose files were forwarded to Manager Thomas, who had unfettered discretion to promote as many as 6 of the applicants to Operations Supervisor. He delegated the initial round of review to a three-person panel, which was instructed to interview all of the applicants by asking them a scripted set of questions and judging their responses against a corresponding set of model answers. The panel then ranked the applicants according to their raw interview scores, and the panel separately ranked the applicants according to their overall scores, taking into consideration other factors, such as their experience, enthusiasm and attitude. Because Manager Thomas believed that the applicants' interview performances were especially pertinent to his hiring decision, he gave the applicants' interview scores a heavier weight when making his ultimate determination. There is simply no support for the proposition that an applicant's overall ranking on the panel's list was objectively indicative of that applicant's qualifications, or for that matter, that Manager Thomas was precluded from departing from the panel's recommendations based on his own sound judgment. An employer is entitled to rebut a prima facie case of discrimination based on an applicant's poor performance in a job interview. *See Johnson v. City of Mobile, AL,* 321 Fed.Appx. 826, 833 (11th Cir.2009).

### B. *Pretext*

While the Department has met its burden of proffering a legitimate, non-discriminatory reason for not promoting Plaintiff, Plaintiff has failed to establish that the reason was pretextual.

#### 1. *Relative Qualifications*

■ Plaintiff first asserts that, because she was sixth on the panel's overall ranking, she was "more qualified than at least one other individual selected" (D.E. No. 37 at 11). This is misguided for a number of reasons. First, there is no objective nexus between the panel's overall ranking and an applicant's qualification for the job. Unlike Manager Thomas, the panel was not vested with decisionmaking authority, and it was well within the bounds of reasonableness for Manager Thomas to determine that an applicant's performance in the interview was more indicative of that applicant's suitability for the job than the panel's overall ranking. Manager Thomas's statement that the interview was "the best indicator of an applicant's competence on agency policies and an understanding of the agency's objectives and goals" is uncontroverted in the record (Thomas Decl., D.E. No. 30, Ex. 5 at 3, ¶ 4). In contrast, according to Manager Thomas, an applicant's number of "[y]ears of service does not in [and] of itself establish knowledge of agency policies or an understanding of how the agency anticipates changing to improve its performance," while the panel's overall rankings were not necessarily indicative of an applicant's supervisory qualifications because they incorporated the

panel's subjective assessment of the applicant's enthusiasm and attitude, among other things.

In this regard, the undersigned pauses to note that the interview in this case was unusual, in that it was arguably *more* objective than the other elements of the application process. Rather than the typical interview, which has a strong subjective component, the interview in this case tested the applicant's knowledge of information relevant to the position and consisted of scripted questions and model answers.[5] In this way, the interview ranking could more properly be characterized as the applicants' score on an oral examination. Plaintiff herself admits that the interview was conducted in an objectively reasonable manner[6] by panelists who did not harbor discriminatory motives (Delgado Depo., D.E. No. 30, Ex. 6 at 4, pp. 40–45).

■ Finally, even if it were somehow possible for Plaintiff to show that she was indeed more qualified than one of the chosen applicants, she has failed to introduce any evidence at all to show that "that the disparities between the successful applicant's and her own qualifications were of such weight and significance that no rea-

sonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff," which is necessary to sustain her burden of proof. *Keaton v. Cobb County, GA,* No. 08–11220, —— Fed.Appx. ——, ——, 2009 WL 212097, at *4 (11th Cir. Jan. 30, 2009) (quoting *Springer v. Convergys Customer Mgmt. Group, Inc.,* 509 F.3d 1344, 1349 (11th Cir.2007)).

### 2. *The Vacancy Announcement*

Plaintiff also complains unpersuasively that the vacancy announcement did not disclose an interview component and that this omission is circumstantial evidence of pretext. Plaintiff first suggests that the failure to mention the interview on the vacancy announcement gives rise to "a compelling argument that the interview scores should not be included in the ranking" (D.E. No. 37 at 11). However, she did not cite any legal precedent to support her position and the undersigned finds it lacking in merit.[7]

Plaintiff does not explain the basis for her assumption that the vacancy announcement is intended to be exhaustive, rather than providing basic guidance to potential

5. As discussed in more detail below, the interview questions were consistent with the vacancy announcement, which told applicants that half of their score would consist of the Managerial Selection Factors applicable to all FAA managers (i.e., achieving results, leading people, building relationships and leading change), while the other half would consist of Air Traffic Operations-specific criteria.

6. To the extent that Plaintiff implies that some applicants may have had an upper hand because they were interviewed telephonically while she was interviewed in person, this argument lacks merit. First, there is no evidence at all to support this claim, beyond Plaintiffs bald speculation. Second, even if a telephonic interview provided some advantage over an in-person interview, there is absolutely no indication in the record that the advantage favored non-minority applicants

over minority applicants. *See Brown v. American Honda Motor Co.,* 939 F.2d 946, 952 (11th Cir.1991) ("It is difficult to hold that a practice which affects ... all races in the same manner is actually designed to conceal a racially discriminatory motive.").

7. Although the undersigned does not consider it for the purposes of ruling on the instant motion, it is perhaps ironic that the subjective factors that boosted Plaintiff's overall ranking in the panel's eyes, such as her attitude and enthusiasm, likely stemmed from her demeanor during the interview, which she now says should be disregarded. There is simply no evidence in the record to suggest whether Plaintiff's overall panel ranking would have been improved or worsened if the Court were to preclude consideration of the applicants' interviews.

job applicants, nor does she explain the basis for believing that the only appropriate remedy for an incomplete vacancy announcement is to preclude the employer from carrying out basic and vital portions of the selection process. Plaintiff admits that she was provided advance notice of the interview and, in fact, requested the first available appointment (Delgado Depo., D.E. No. 30, Ex. 6 at 4, pp. 38–39) ("Q: So you basically asked what's the earliest you have? A: Correct. Q: And you didn't ask for later in the day or anything like that? A: No."). Nor does she say that she would have done anything different if the interview component were included in the vacancy announcement.

■ And, finally, it is not sufficient for Plaintiff to arbitrarily point to a purported irregularity without suggesting that it had any improper discriminatory effects or that it was related to the Department's alleged discriminatory animus. *See Rojas v. Florida*, 285 F.3d 1339, 1344 n. 4 (11th Cir.2002) (stating that, "[t]o establish pretext, a plaintiff must show that the deviation from policy occurred in a discriminatory manner," and quoting *Brown v. American Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir.1991) for the proposition that "[i]t is difficult to hold that a practice which affects ... all races in the same manner is actually designed to conceal a racially discriminatory motive."). In this vein, the undersigned notes that Plaintiff initially contended in the administrative proceedings that Manager Thomas's propensity to favor African–Americans in his employment decisions constituted evidence of his discriminatory intent. But, she was forced to retreat from this position in light of the fact that only 1 out of the 6 applicants chosen for the promotion in this case was African–American (D.E. No. 30, Ex. 11 at 3) (Final Agency Decision stating that Plaintiff "states that the Air Traffic Manager, Kenneth Thomas, had mainly selected black individuals.").

### 3. *The Eligibility Criteria*

Plaintiff also contends that the Department disregarded the Eligibility Criteria listed on the vacancy announcement, which violated its standard hiring policy and makes it "abundantly clear that a factual dispute has been created as to how and why the individuals were selected for promotion and Plaintiff was not" (D.E. No. 37 at 12).

■ This argument is, however, essentially a *non sequitur.* The Department's selection process incorporated various factors, with a "special emphasis" on the applicant's raw interview scores, as determined by an impartial panel of interviewers. As stated above, the record in this case demonstrates that the process employed by the Department was "one that might motivate a reasonable employer" to make a promotion decision similar to the one made in this case. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). To show that the proffered reason for making that promotion decision was a pretext for discrimination, Plaintiff must "meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* Plaintiff's current argument, however, does not meet this reason head on, and instead relies on bald conjecture to suggest that a different decisionmaking process would have somehow resulted in a better decision. Where a poor interview is the proffered reason for making an employment decision, one established way of rebutting that reason "head on" is to show that employer did not offer a " 'clear and reasonably specific explanation' for reaching its conclusion." *Johnson v. City of Mobile, AL*, 321 Fed.Appx. 826, 833 (11th Cir.2009) (quoting *Chapman*, 229 F.3d at 1033–35). Since the evidence is clear that the interview was conducted and scored in an objectively

fair and non-discriminatory manner, the interview questions related to the applicants' competence to fulfill the job in question, and Manager Thomas explained his justification for relying heavily on the panel's interview scores in reaching his conclusion, it is perhaps not surprising that Plaintiff is effectively seeking to change the subject.

Even if this argument were relevant, it fails on two levels. First, it is factually baseless because Plaintiff has not demonstrated that the Department even disregarded the Eligibility Criteria in the first place. The record reflects that at every stage of the selection process—including, significantly, at the interview stage—the Department did indeed consider the Eligibility Criteria. According to the vacancy announcement, consideration of the applicants' ability to (1) achieve results, (2) lead people, (3) build relationships, and (4) lead change would constitute 50% of the evaluation, with the applicants' familiarity with Air Traffic Operations to constitute the remaining 50% (*see* Heideck Decl., D.E. No. 30, Ex. 2 at 6) (attaching copy of interview questions).

■ Moreover, Plaintiff continues to ignore the fundamental requirement that her pretext argument must be tied to a discriminatory motive. As the Eleventh Circuit has emphasized, an employer may take an employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1187 (11th Cir. 1984). It is not sufficient for Plaintiff to simply identify a perceived shortcoming in the Department's selection process and leave it up to sheer speculation that it was caused by the Department's animus towards a protected class. Without any evidence in the record to support an inference that the Department conducted its hiring

procedure in a discriminatory manner, Plaintiff has failed to carry her burden of proof. *See Mitchell v. USBI Co.*, 186 F.3d 1352, 1355–56 (11th Cir.1999) ("Even assuming that USBI did deviate from its policy, this deviation does not raise an inference of discrimination. Standing alone, deviation from a company policy does not demonstrate discriminatory animus."); *Clark v. Huntsville City Bd. of Educ.*, 717 F.2d 525, 529 (11th Cir.1983) (" 'Proof of discriminatory motive is critical' in a disparate treatment case.... The court thus may not circumvent the intent requirement of the plaintiff's ultimate burden of persuasion by couching its conclusion in terms of pretext; a simple finding that the defendant did not truly rely on its proffered reason, without a further finding that the defendant relied instead on race, will not suffice to establish Title VII liability.") (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). As mentioned above, Plaintiff asserted in the administrative proceedings that she was not selected because Manager Thomas had a tendency to favor African–Americans, but she does not make that argument here, as only 1 of the 6 applicants chosen was African–American.

In short, at this stage of the analysis, it is Plaintiff who bears the burden of demonstrating that the Department's proffered reason for not promoting her was a pretext for discrimination. But, Plaintiff attempts to turn the *McDonnell* framework on its head by suggesting that Defendant must prove that its purported failure to consider the Eligibility Criteria was not the result of discrimination against members of her protected class.

## IV. CONCLUSION

This case is similar to recent Eleventh Circuit cases holding that plaintiffs failed

to establish pretext. For instance, in *Conner v. Lafarge North America, Inc.*, 343 Fed.Appx. 537 (11th Cir.2009), an African–American plaintiff sued his employer after he was turned down for a promotion based on his low interview scores even though the plaintiff claimed to be objectively more qualified than the white applicant chosen for the job. In affirming summary judgment in favor of the employer, the Eleventh Circuit stated that, without any evidence that the employer's selection procedures were "used as a mask for discrimination," its "reliance on the interviews alone, rather than in conjunction with the job posting requirements or the applicants' other qualifications, may not have been wise, but it does not demonstrate pretext." *Id.* at 542 (quoting *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir.2007)) (internal quotation marks and alterations omitted). The Department's case is even stronger here because (1) the manner in which the interviews were conducted and scored suggest that they were more objective than the typical interview, and indeed more closely resembled an oral examination; and (2) the promotion decision was not based solely on the interviews, since the record reflects that Manager Thomas at the very least considered the applicants' other qualifications as well as their recommendations on file.

Similarly, in *Saunders v. Emory Healthcare, Inc.*, 360 Fed.Appx. 110 (11th Cir. 2010), the court held that the plaintiff failed to establish pretext because the defendant's

> decision to waive the minimum years of clinical experience requirement in [another applicant]'s favor and to prefer [the other applicant] over [the plaintiff] in spite of the fact that [the plaintiff] had more clinical experience was reasonable in light of the evidence showing that [the other applicant] was better qualified in terms of communication, leadership, and workplace behavior, skills of great importance in a management position. Therefore, [the plaintiff] has failed to demonstrate that [the defendant]'s proffered reason is false. Moreover, [the plaintiff] has failed to produce any evidence indicating that discrimination was the actual reason behind the decision to hire [the other applicant].

*Id.* at 115.

Because the Court agrees with the Department that Plaintiff cannot rebut the Department's legitimate basis for denying her application for a promotion, Defendant is entitled to a judgment as a matter of law. It is therefore unnecessary to address the Department's remaining arguments relating to whether Plaintiff established a prima facie claim of discrimination, whether Plaintiff exhausted her administrative remedies regarding her national origin claim, and whether Plaintiff can support her claim for emotional distress damages. Based upon a careful review of the record as a whole and for the reasons stated above, it is accordingly

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (D.E. No. 30) is **GRANTED**. This case is **CLOSED** and all pending motions are **DENIED AS MOOT**. A final judgment will be entered by separate Order.